## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JAMES R. HOPES, JR.,
an individual,

         Case No.:

      Plaintiff,

v.

EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,
AT&T MOBILITY LLC.,
a foreign limited liability company,
TRUEACCORD CORP.,
a foreign profit corporation, and
SUNRISE CREDIT SERVICES, INC.,
a foreign profit corporation,

      Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, JAMES R. HOPES, JR. (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby files this Amended Complaint against Defendants, EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), AT&T MOBILITY LLC. (hereinafter, "AT&T"), TRUEACCORD CORP. (hereinafter, "TrueAccord"), and SUNRISE CREDIT SERVICES, INC. (hereinafter, "Sunrise") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action brought by an individual consumer for damages for Sunrise's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Sunrise improperly attempted to credit-report and subsequently verified its credit reporting of an alleged balance owed on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Experian that was created or allegedly incurred as a result of identity theft and fraud.  More specifically, despite Plaintiff repeatedly advising Sunrise that he did not personally open the alleged account, did not authorize the opening of the alleged account, did not use the alleged account, and did not benefit from the account in any way—and after Plaintiff disputed Sunrise's reporting of such erroneous information directly to Experian— Sunrise *continued* to report this fraudulent account with a significant balance due and past-due.

2.     Furthermore, this is an action for damages for Experian's violations of the FCRA wherein Experian each continued to incorrectly report Plaintiff as the individual responsible for the alleged Sunrise account after Plaintiff repeatedly disputed and advised that any balance allegedly owed was a result of identity theft and fraud, and after Plaintiff provided information to Experian including sworn statements and police reports.

3.     Additionally, this is an action for damages brought by an individual consumer for AT&T and TrueAccord's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA") and Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (the "FDCPA")

wherein AT&T and TrueAccord attempted to collect a consumer debt directly from Plaintiff that Plaintiff did not owe.

## JURISDICTION, VENUE & PARTIES

4.     Jurisdiction of this Court arises under 28 United States Code, Section 1331, pursuant to the FCRA, 15 United States Code Section 1681, et seq. Supplemental jurisdiction exists permitting Plaintiff's claims under the FCCPA pursuant to 28 United States Code, Section 1367.

5.     Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.     Venue is proper in this District as the acts and transactions described herein occur in this District.

7.     At all material times herein, Plaintiff is a natural person residing in Pinellas County, Florida.

8.     At all material times herein, Sunrise is a foreign profit corporation existing under the laws of the state of New York with its principal place of business located at 8 Corporate Ctr Drive, Suite 300, Melville, NY 11747.

9.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.     At all material times herein, TrueAccord is a foreign profit corporation existing under the laws of Delaware with its principal place of business located at 16011 College Blvd, Suite 130, Lenexa, KS 66219.

3

11.     At all material times herein, AT&T is a foreign for-profit corporation existing under the laws of Delaware with its principal place of business located at 1025 Lenox Park Blvd NE, Atlanta, GA 30319.

## FCRA STATUTORY STRUCTURE

12.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

13.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

14.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

15.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information

submitted by the consumer.  *Id.* at § i(a)(4).

16.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

17.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

18.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

19.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees.  *Id.* at § o.

## FCCPA AND FDCPA STATUTORY STRUCTURE

20.     The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C. §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

21.     The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

22.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

23.     For example, the FDCPA prohibits a debt collector from using false, deceptive, or misleading representations or means in connection with the collection of

6

any consumer debt.  See 15 U.S.C. §§ 1692(d)-(e).

24.     Similarly, the FCCPA prohibits a person from attempting to collect a consumer debt that is known to be illegitimate.  See Fla. Stat. §§ 559.72 (9).

## GENERAL ALLEGATIONS

25.     At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) and the FCCPA, Section 559.55(8) and the FDCPA, Section 1692a(3) because he is an individual and allegedly obligated to pay a debt.

26.     At all material times herein, Sunrise, itself and through its subsidiaries, regularly extends credit—and credit reports debts associated with the same—allegedly owed by consumers residing in Pinellas County, Florida.

27.     At all material times herein, Sunrise reports information concerning an alleged collections account that was opened as a result of identity theft and fraud, referenced by account number beginning 418134- (hereinafter, the "Alleged Debt" or the "Account").

28.     At all material times herein, AT&T and TrueAccord attempt to collect an alleged consumer debt, including but not limited to, a balance allegedly owed for an AT&T service account (hereinafter, the "Alleged Debt").

29.     At all material times herein, Plaintiff did not open the Account, Plaintiff did not authorize any individual or entity to open the Account in his name, Plaintiff did not use the Account in any manner, and Plaintiff did not receive the benefit of any good or services as a result of any transactions made creating the Alleged Debt.

30.     At all material times herein, TrueAccord uses interstate mail and the principal purpose of its business is to collect debt.

31.     At all material times herein, Sunrise is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

32.     At all material times herein, AT&T and TrueAccord are each a "person" subject to the FCCPA, Section 559.72.  *See* Fla. Stat. § 559.55(3); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

33.     At all material times herein, AT&T and TrueAccord's conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by the FCCPA, Section 559.55(2) and the FDCPA, Section 1692a(2).

34.     At all material times herein, Sunrise furnishes information to Experian regarding the Account and the corresponding Alleged Debt referenced by account number beginning in 418134- (hereinafter, the "Account").

35.     At all material times herein, Sunrise furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

36.     At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information

concerning consumers for the purpose of furnishing consumer reports. Experian disburses such consumer reports to third parties under contract for monetary compensation.

37.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

38.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

### FACTUAL ALLEGATIONS

39.    Prior to July 2023, an AT&T services account was allegedly opened in Plaintiff's name (the "Account").

40.    To the extent the Account was opened by an individual or entity, such individual or entity opened the Account without Plaintiff's consent, knowledge, or approval.

41.    Plaintiff did not receive billing statements at his address from AT&T regarding the Account.

42.    To the extent that charges were made on the Account after its inception resulting in an alleged balance due (i.e., the Alleged Debt), Plaintiff did not make any such charges himself, Plaintiff did not authorize any other individual or entity to make charges for themselves or on Plaintiff's behalf, and Plaintiff did not receive the benefit of any goods or services as a result of charges made on the Account.

43.    Prior to or about July 2023, the Account was placed for collections with

Sunrise.

44.     On or about July 11, 2023, Plaintiff received an alert that he had new potentially negative information on his credit report.

45.     At this time, Plaintiff discovered the Sunrise account listed on his Experian credit report with an original creditor of Sunrise Credit Services.

46.     On or about July 11, 2023, following the discovery of the Account, Plaintiff called Experian and notified them that the Account did not belong to Plaintiff and requested that Experian delete the Account immediately.

47.     On or about July 21, 2023, Plaintiff called Experian and notified them that the Account did not belong to Plaintiff and requested that Experian delete the Account immediately.

48.     On or about July 25, 2023, Plaintiff filed a police report with the St. Petersburg Police Department regarding identity theft and the fraudulent charges made on the Account referenced by police report incident number 2023-027441, in which Plaintiff agreed to prosecute the perpetrator(s) if identified.

49.     On or about July 31, 2023, Plaintiff called Experian and notified them that the Account did not belong to Plaintiff and requested that Experian delete the Account immediately.

50.     On or about September 12, 2023, Plaintiff called Experian and notified them that the Account did not belong to Plaintiff and requested that Experian delete the Account immediately.

51.     On or about September 15, 2023, Plaintiff filed an FTC Affidavit with

the Federal Trade Commission regarding the fraudulent account reported by Sunrise.

## TRUEACCORD'S DEBT COLLECTION COMMUNICATIONS

52.     On or about November 15, 2023, TrueAccord sent a letter directly to Plaintiff in its attempt to collect the Alleged Debt.

53.     More specifically TrueAccord's collection letter asserted that Plaintiff owed a balance to AT&T in excess of $1,460.00.

54.     TrueAccord's conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state and federal law.

55.     Given TrueAccord's conduct and its apparent intention and ability to continue to collect the Alleged Debt directly from Plaintiff in violation of said debt collection laws, Plaintiff has no adequate remedy at law.

56.     Plaintiff needs and is entitled to injunctive relief with respect to AT&T and TrueAccord's debt collection communications in violation of the FCCPA.

57.     AT&T and TrueAccord's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not owing the Alleged Debt personally, Plaintiff had no choice but to pay the Alleged Debt or continue to endure AT&T and TrueAccord's unlawful debt collection practices.

## EXPERIAN'S CREDIT REPORTING OF THE ACCOUNT
## AND PLAINTIFF'S DISPUTES PURSUANT TO THE FCRA

58.     On or about September 20, 2023, Plaintiff obtained a copy of his

consumer disclosure report as maintained by Experian.

59.     Despite never personally opening the Account nor authorizing anyone to open the Account on his behalf, Sunrise and Experian reported the Sunrise collections account (i.e., the Account) as owed by Plaintiff personally with a balance due in the amount of $1,462.00 and a $1,462.00 balance past-due as of September 2023.

60.     Defendants' reporting of the Account with a balance due or past-due in excess of $0.00 as of September 2023 is inaccurate because any alleged balance owed was the result of identity theft and fraud.

61.     To be clear, Plaintiff never opened the Account nor did he authorize the opening of the Account, and Plaintiff likewise did not make payments on the fraudulent Account.

62.     On or about October 6, 2023, Plaintiff disputed the reporting of the Account to Experian, disputing Defendants' reporting of the Sunrise Account with a balance owed and as belonging to Plaintiff and including a copy of Plaintiff's FTC Affidavit (hereinafter, "First Written Dispute"). Please see attached true and correct copies of the First Written Dispute and its enclosures labeled as Composite Exhibit "A."

63.     Experian received Plaintiff's First Dispute.

64.     Experian communicated Plaintiff's First Dispute to Sunrise.

65.     Sunrise received notice of Plaintiff's First Dispute via Experian.

66.      In response to Plaintiff's First Dispute, Experian finally deleted the Account.

## DAMAGES

67.     As a result of Defendants' reporting of the Debt, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he would be denied credit as a result of the erroneous and incorrect reporting of the Account reflecting the Alleged Debt asserted as owed by Sunrise if he needed to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

68.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account with a balance past-due, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

69.     Overall, Plaintiff suffered damage to his reputation as a result of Defendants' conduct.

70.     Further, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to Defendants that he did not initiate or authorize the opening of the Account including supplying Defendants with supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account and Sunrise's ongoing attempts to collect the Alleged Debt.

71.    Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

## COUNT ONE:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### <u>VIOLATION OF FLORIDA STATUTES, SECTIONS 559.72(7) and (9)</u>
### (As to AT&T and TrueAccord Only)

Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) as if fully restated herein and further states as follows:

72.    AT&T and TrueAccord are each subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by communicating with Plaintiff in an attempt to collect an alleged consumer debt through means which can reasonably be expected to abuse or harass Plaintiff and violated Florida Statutes, Section 559.72(9) by communicating with Plaintiff in an attempt to collect the Alleged Debt despite AT&T and TrueAccord possessing knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that AT&T and TrueAccord knows does not exist.

73.    Specifically, as stated herein, Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until he received an alert on his credit reporting; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges

14

or transactions made using the Account; (v) Plaintiff completed an FTC Identity Theft Report; and (vi) Plaintiff filed a Police Report.

74.    Plaintiff repeatedly provided the above-listed information including the FTC Affidavit and police identity theft report information in support of his ongoing dispute.

75.    As such, AT&T and TrueAccord possessed actual knowledge that Plaintiff did not legitimately owe the Alleged Debt, yet AT&T and TrueAccord continued to communicate directly with Plaintiff in an attempt to collect the Alleged Debt.

76.    More specifically, despite possessing knowledge that the Alleged Debt was not legitimately incurred by Plaintiff and therefore not legitimately owed by Plaintiff, TrueAccord sent a collection letter to Plaintiff demanding payment on the Alleged Debt.

77.    As such, AT&T and TrueAccord attempted to collect the Alleged Debt— an amount known to be illegitimate—and asserted a legal right that does not exist in its collection letter made in an attempt to collect the Alleged Debt from Plaintiff.

78.    Despite Plaintiff's exhaustive efforts advising that the Alleged Debt was the result of identity theft and fraud, AT&T and TrueAccord continued to communicate with Plaintiff in an attempt to collect the Alleged Debt.

79.    AT&T and TrueAccord's conduct served no purpose other than to abuse and harass Plaintiff into paying the Alleged Debt, leading Plaintiff to believe that despite not opening the Account personally nor authorizing another individual to open

the Account in his name or make charges to the same, AT&T and TrueAccord could and would continue to attempt to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt in full.

80.    As a result of AT&T and TrueAccord's actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite not owing the Alleged Debt personally, Plaintiff must simply endure AT&T and TrueAccord's ongoing and invasive debt collection communications.

81.    AT&T and TrueAccord's willful violation of, *inter alia*, the Florida Consumer Collection Practices Act as a means to collect the Alleged Debt constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Sections 559.72(7) and 559.72(9).

82.    As a direct and proximate result of AT&T and TrueAccord's actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e, e(2)(A), and e(10)**
**(As to TrueAccord Only)**

Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) as if fully restated herein and further states as follows:

83.    TrueAccord is subject to, and violated the provisions of, 15 United States Code, Section 1692e, e(2)(A), e(8), and e(10) by using false representations and deceptive means in attempting to collect the Alleged Debt, including by falsely

representing the amount, legal status, or character of the alleged Debt.

84.    Specifically, TrueAccord possessed actual knowledge that the account was opened as the result of identity theft and fraud, that Plaintiff did not open the AT&T account or authorize any other individual to open the AT&T account in his name and likewise did not receive the benefits if any goods or services forming the basis of the Alleged Debt and Plaintiff repeatedly advised Defendants that he did not owe the Alleged Debt for such reasons.

85.    Despite knowing that Plaintiff did not owe the Alleged Debt, TrueAccord sent at least one (1) letter to Plaintiff asserting a balance owed by Plaintiff with respect to the Alleged Debt in its attempts to collect the Alleged Debt.

86.    Moreover, TrueAccord falsely and deceptively asserted that they could and would continue to collect the Alleged Debt from Plaintiff unless and until Plaintiff paid the Alleged Debt.

87.    TrueAccord's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to TrueAccord on the Alleged Debt or continue to endure TrueAccord's unlawful collection attempts, the repetitive transfer of the Alleged Debt to a new debt collector, and potential derogatory credit reporting of the Alleged Debt as owed by Plaintiff personally.

88.    As a direct and proximate result of TrueAccord's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**<u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)</u>**

**(As to Sunrise Only)**

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

89.     Sunrise is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian delete the Account from Plaintiff's credit report and credit file after re-investigating Plaintiff's repeated disputes.

90.     As described above,  Plaintiff was not and is not personally liable for the Alleged Debt, because: (i) Plaintiff did not personally apply for the Account or open the Account; (ii) Plaintiff did not authorize any person to open to the Account in Plaintiff's name or on Plaintiff's behalf; (iii) Plaintiff possessed no knowledge of the Account that was alleged opened until he received an alert on his credit reporting; (iv) Plaintiff did not receive the benefit of any money, goods, or services from any charges or transactions made using the Account; (v) Plaintiff completed an FTC Identity Theft Report; and (vi) Plaintiff filed a Police Report.

91.     Despite Plaintiff not being responsible for the Alleged Debt, and despite Sunrise receiving notice of Plaintiff's disputes from Plaintiff and Experian—including the information and documents referenced in the above paragraph— Sunrise willfully and/or negligently failed to request that Experian delete the tradeline associated with the Account and continued to report derogatory, late payment information to

Experian including significant balances due, as significantly past-due, and derogatory and/or negative payment history.

92.    Between July 2023 and October 2023, Plaintiff repeatedly disputed Sunrise's reporting of the Account to Experian, and Experian forwarded Plaintiff's disputes to Sunrise.

93.    In total, Sunrise received *at least* five (2) disputes from Experian regarding its reporting of the Account.

94.    The documents Plaintiff enclosed in support of his disputes included the FTC Affidavit.

95.    In response to Plaintiff's disputes, despite Sunrise receiving notice of Plaintiff's disputes from Experian—including the information and documents referenced in the above paragraph— Sunrise failed to request that Experian delete the Account from Plaintiff's credit reports and credit files.

96.    Instead, Sunrise purportedly verified and/or updated its reporting of the Account including significant balances due, as significantly past-due, and with derogatory and/or negative payment history.

97.    Sunrise's refusal to request that Experian update its reporting of the Account as Plaintiff requested was intentionally, willfully, and knowingly done as Sunrise clearly possessed knowledge that the Alleged Debt was a result of identity theft and fraud.

98.    Sunrise's re-investigations were not conducted in good faith.

99.    Sunrise's re-investigations were not conducted reasonably.

100.    Sunrise's re-investigations were not conducted using all information and documents reasonably available to Sunrise.

101.    As a result of Sunrise's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Sunrise's derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

102.    Sunrise's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

103.    Sunrise's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Experian)**

Plaintiff re-alleges paragraphs one (1) through seventy-seven (77) as if fully

restated herein and further states as follows:

104.  Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

105.  Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports with respect to the Sunrise Account.

106.  Specifically, despite Plaintiff *repeatedly* advising Experian that Plaintiff did not open the Account, did not authorize any other person to open the Account in his name or on his behalf, did not make any charges on the Account, did not receive the benefit of any money, goods, or services obtained as a result of any transactions or charges made on the Account—and therefore, the Account was opened as a result of identity theft and fraud—Experian each continued to report the Account with a balance due, with a balance past-due, and with derogatory and/or negative payment history resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

107.  Further, Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Experian credit reports and credit files.

108.  For example, despite Plaintiff's repeated disputes, Experian failed to

delete the Account from Plaintiff's credit reports and credit files in response to any of Plaintiff's disputes and failed to request documents from Sunrise in support of Sunrise's reporting of the Account.

109.    Despite Plaintiff notifying Experian of its reporting errors and providing documents in support of his disputes, Experian continued to report the Account with a balance due, balance past-due, and with derogatory and/or negative payment history, and subsequently published Plaintiff's credit reports to Plaintiff current creditors and/or potential future creditors including the inaccurately reported Account.

110.    As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

111.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

112.    Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle

Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i** *et seq.*
**(As to Experian)**

Plaintiff re-alleges paragraphs one (1) through seventy-one (71) as if fully restated herein and further states as follows:

113.   Experian is subject to, and violated the provisions of, 15 United States Code, Section: 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and 1681i(a)(5) by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

114.   Specifically, Experian each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

115.   Overall, Plaintiff's disputes provided Experian with sufficient information and supporting documentation allowing Experian to identify that the alleged balance owed on the Account was created as a result of identity theft and fraud,

and therefore, should be deleted and removed from Plaintiff's credit reports and credit files.

116.    Following Plaintiff's four telephone disputes, Experian continued to report the Account in Plaintiff's credit reports and files with a significant balance due as well as derogatory, late payment information.

117.    Given that Plaintiff did not personally open the Account, did not authorize anyone to open the Account in his name, and did not benefit from the Account in any way, and given that Experian did not request any documents from Sunrise supporting Sunrise's reporting of the Account, Experian could not reasonably verify that Plaintiff is personally responsible for the balance allegedly owed on the Account.

118.    Experian continued to inaccurately report the Account with derogatory, late payment information and with a significant balance past-due following Plaintiff's four phone disputes, causing the Account to be reported as a derogatory, negative, or adverse account.

119.    As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

120.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

121.    Experian's reinvestigations of Plaintiff's disputes were not conducted

reasonably.

122.   Experian's reinvestigations merely copied and relied upon the inaccurate information conveyed by Sunrise.

123.   Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

124.   Experian's reinvestigation procedures are unreasonable.

125.   Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Experian.

126.   Experian's failure to review and reasonably consider all information received in Plaintiff's disputes—which clearly showed the alleged balance was created as a result of identity theft and fraud—was done in bad faith.

127.   Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Account.

128.   As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, were deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse account.

129.   Experian's actions were a direct and proximate cause of, as well as a

25

substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

130.    Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment declaring that AT&T and TrueAccord violated the FCCPA;

b.    Judgment enjoining AT&T and TrueAccord from engaging in further conduct in violation of the FCCPA;

c.    Judgment against AT&T and TrueAccord for maximum statutory damages under the FCCPA;

d.    Judgment against TrueAccord for maximum statutory damages for violations of the FDCPA;

e.    Judgment against Sunrise and Experian for maximum statutory damages for violations of the FCRA;

f.    Actual damages in an amount to be determined at trial;

g.    Compensatory damages in an amount to be determined at trial;

h.     Punitive damages in an amount to be determined at trial;

i.     An award of attorney's fees and costs; and

j.     Any other such relief the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*
Jon P. Dubbeld, Esq., FBN 105869
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 300-1929
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*